UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE G. REDMAN,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>DEBBIE ASUNCION,<br><br>　　　　　　Respondent. | No. 2:16-cv-01662 JAM GGH<br><br><br>FINDINGS & RECOMMENDATIONS |

*Introduction*

Petitioner, a state prisoner proceeding through counsel, has filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1995 conviction and sentence. This action proceeds on the amended petition filed June 19, 2017. See ECF No. 34.

Pending before the court is respondent's motion to dismiss on the grounds that petitioner is barred by the one-year statute of limitations pursuant to 28 U.S.C. § 2244(d) and for failure to exhaust his claims pursuant to 28 U.S.C. § 2254(b). ECF No. 39 at 6. Petitioner has filed an opposition, ECF No. 43, and respondent a reply, ECF No. 46. The motion to dismiss was heard on the court's regular law and motion calendar on January 18, 2018. ECF No. 47. Mark Eibert appeared on behalf of petitioner, and Deputy Attorney General Max Feinstat appeared on behalf of respondent. After carefully reviewing the filings, the court now issues the following findings and recommendations that respondent's motion be granted.

1

***Procedural Background***

*Direct Appeal*

On July 14, 1995, petitioner was convicted of three counts of robbery in Sacramento County Superior Court on July 14, 1995. Resp't's Lodg. Doc. No. 1. The enhancement for felon in possession of a firearm was found true. Id. Petitioner was sentenced to an aggregate prison term of 22 years to life with a minimum of 75 years. On April 10, 1996, with the assistance of counsel, petitioner appealed to the California Court of Appeal, Third Appellate District. Resp't's Lodg. Doc. No. 12. The conviction was affirmed on September 16, 1997. Id. (reversing and remanding for resentencing but otherwise affirming the judgment). No petition for review with the California Supreme Court was filed.

*Post-Conviction Appeal*

The first state habeas petition, with the assistance of counsel, was filed in the Sacramento County Superior Court on February 24, 2005, and denied on March 18, 2005. Resp't's Lodg. Doc. Nos. 18, 19. The subsequent state habeas petitions were filed by petitioner in pro per. The second state habeas petition was filed in the California Court of Appeal, Third Appellate District on August 31, 2005, and denied on September 8, 2005. Resp't's Lodg. Doc. Nos. 26, 27. The third state habeas petition was filed in the California Supreme Court on June 26, 2006, and denied on January 24, 2007. Resp't's Lodg. Doc. Nos. 30, 31. The fourth state habeas petition was filed in the Sacramento County Superior Court on November 20, 2008, and denied on December 30, 2008. Resp't's Lodg. Doc. Nos. 20, 21. The fifth state habeas petition was filed in the California Court of Appeal, Third Appellate District on August 12, 2009, and denied on August 20, 2009. Resp't's Lodg. Doc. Nos. 28, 29. The sixth state habeas petition was filed in the California Supreme Court on September 23, 2009, and denied on March 10, 2010. Resp't's Lodg. Doc. Nos. 32, 33. The seventh state habeas petition was filed in the Sacramento County Superior Court on April 4, 2014, and denied on May 7, 2014. Resp't's Lodg. Doc. Nos. 22, 23. The eighth state habeas petition was filed in the Sacramento County Superior Court on December 12, 2014, and denied on January 26, 2015. Resp't's Lodg. Doc. Nos. 24, 25. The ninth, and final petition, was

////

filed in the California Supreme Court on December 22, 2015, and denied on March 23, 2016. Resp't's Lodg. Doc. Nos. 34, 35.

Petitioner filed his original federal petition on April 28, 2016 in the Northern District of California.[1] ECF No. 1. The case was subsequently transferred to the Eastern District of California and referred to the undersigned. ECF Nos. 6, 7. Upon having counsel appointed, petitioner filed an amended complaint that is now the operative petition before the court. ECF No. 34. Petitioner alleges two grounds for relief: (1) actual innocence; and (2) ineffective assistance of counsel.

*Factual Background and the Federal Petition*

Normally, the background facts and the substance of the claims are not very germane to an AEDPA statute of limitations motion to dismiss, but such is not the case here. The background facts which help to place the claims in context are taken from People v. Newsome (Redman), 57 Cal. App. 4th 902, 905-908 (1997):[2]

> The Sacramento police suspected drug activity at 3325 22nd Avenue. Sergeant de Borda was conducting surveillance of the residence on the afternoon of August 2, 1994. He was on the levee behind a retaining wall, using cameras and binoculars. At about 4:30 he saw three black males arrive at the residence. Newsome and Redman were two; the other man was never identified. Redman was wearing a football jersey with the number 85 and a black baseball cap. After about 18 minutes Nicholas Correa arrived. Then a young Hispanic man arrived and was yanked inside. Redman came out with the young man and left on a bike. A large woman then arrived.
>
> Redman returned in a Ford Bronco. He honked the horn and then went inside. He returned to the Bronco carrying a camera bag and a travel bag. Redman and Newsome left in the Bronco. The police trailed the Bronco, but lost it.
>
> The police received information that a robbery had taken place inside the residence. One of the pictures de Borda had taken

---

[1] The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court. Houston v. Lack, 487 U.S. 266, 275–76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir.2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

[2] Factual findings by state appellate courts are presumed to be correct unless shown to be clearly, factually erroneous. Cabana v. Bullock, 474 U.S. 376, 388 n.5 (1986).

showed Redman holding a gun. The Bronco was registered to Redman's girlfriend, Debra Fontes.

The police contacted Redman's federal parole agent and federal agents obtained a search warrant for Redman's residence. The warrant authorized the search for weapons and related evidence. Sergeant de Borda accompanied the federal agents during the search. He found the camera bag that Redman had carried from the residence and the jersey and cap he wore. Inside the camera bag were knives and tools later identified as taken during the robbery.

\*\*\*

Newsome and Redman were charged with four counts of robbery (Pen.Code, § 211; all further unspecified references are to this code), with the allegation they used a firearm in the commission of these offenses (§ 12022.5, subd. (a)). Each was charged as a felon in possession of a firearm (§ 12021, subd. (a)). Newsome was charged with two counts of dissuading a witness (§ 136.1, subd. (c)(1)). It was alleged each defendant had two serious felony convictions which brought him under the Three Strikes law (§ 667, subds.(b)-(i)), as well as eligible for the five-year enhancement of section 667, subdivision (a). It was further alleged that Newsome had served two prison terms, qualifying for one-year enhancements under section 667.5, subdivision (b).

When the fourth robbery victim failed to appear after being subpoenaed and could not be located, the People moved to dismiss one robbery count for insufficient evidence. The motion was granted.

Newsome and Redman both presented alibi defenses. Redman's girlfriend testified he was working at Googenheimer's. She got home from work at 5:30 and he called shortly thereafter. She claimed the jersey the police found belonged to a friend of her brother's. A friend testified Redman was working with him at the Stillwater Cafe on August 2. They got off work at 2:30, cashed their paychecks, bought gas, and had a few beers before going home. Another friend testified Redman came by shortly after 5:00.

In his federal petition, now the First Amended Petition, filed many years later, petitioner asserts: (1) Ground 1:"[Petitioner] is actually innocent of the crime of which he was convicted. [Petitioner] did not rob, or participate in, assist, or aid and abet the robbery in any way." ECF No. 34 at 26. This ground for relief is based upon the present day statement of the co-robber, Newsome, that petitioner was not present at the robbery; it is also based upon two latter day witnesses (Debra Fontes (girlfriend of petitioner) and Troy Fontes) that tools connected with the robbery were actually tools that had been at the house where petitioner was living years prior to

4

the robbery; and (2) Ground 2: Counsel was ineffective: "[I]f defense trial counsel had conducted an adequate investigation, he could have discovered that one of the witnesses he actually called for a different purpose—Debra Fontes—knew that the tools and knives taken from her house belonged to Hank Reynolds, not Mollan, and had been in her house for years before the robbery. He also could have found a second credible witness, Troy Fontes, with the same exculpatory information. See ECF No. 34 at Exhs. 3, 8, 9.

***Motion to Dismiss***

Respondent moves to dismiss the instant federal petition on the grounds that it was filed outside of the one-year statute of limitations pursuant to 28 U.S.C. § 2244(d).[3] ECF No. 39 at 6. Petitioner argues the limitations period did not commence until the factual predicate of his claims were discovered thereby subjecting his claims to an alternate trigger date pursuant to 28 U.S.C. 2244(d)(1)(D). ECF No. 43 at 5. In the alternative, petitioner argues he is exempt from the statute of limitations based on actual innocence. Id.

    I.   Statute of Limitations

On April 24, 1986, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). Pursuant to 28 U.S.C. § 2244(d)(1), AEDPA imposes a one-year statute of limitations for federal habeas corpus petitions. 28 U.S.C. §2244(d)(1) provides four alternate trigger dates for commencement of the limitations period:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[3] The undersigned will not rule on respondent's exhaustion claims.

5

recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

(D) or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

### A. Finality of Direct Review under 28 U.S.C. § 2244(d)(1)(A)

The California Court of Appeal, Third Appellate District affirmed petitioner's conviction on September 16, 1997. The record shows that petitioner did not submit a petition for review with the California Supreme Court. Therefore, petitioner's conviction became final 40 days after the Court of Appeal's decision on October 27, 1997.[4] See Cal. Rules of Court 8.264(b)(1), 8.500(e)(1) (Court of Appeals decision is final 30 days after filing; petition for review with the California Supreme Court must be served and filed 10 days after the Court of Appeal's decision is final); accord, Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008). Accordingly, the statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(A) commenced the following day on October 28, 1997. See Patterson v. Stewart, 251 F.3d 1243, 1244 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)). Therefore, petitioner had until, October, 28, 1998, that is until one year after finality of conviction, to file a timely federal petition. Accordingly, this instant action filed 17 years later on April 28, 2016 is barred as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A).

Of course, no statutory tolling is possible as the limitations period, for purposes of § 2244(d)(1)(A), expired long before the first state habeas petition was filed.

### B. New Factual Predicate under 28 U.S.C. § 2244(d)(1)(D)

28 U.S.C. § 2244(d)(1)(D) calculates AEDPA's statute of limitations period commencing with "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." "Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known by the date the appellate process ended. The due diligence clock starts ticking when a person

---

[4] The fortieth day was in actuality on October 26, 1996. However, because the last day ended on a Sunday, the period continues to run to the next day. Fed. R. Civ. P. 6(a)(1)(C).

knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012)(citations and internal quotation marks omitted). Petitioner contends that his grounds for relief are entitled to a trigger date of "2013 or 2014" pursuant to 28 U.S.C. § 2244(d)(1)(D). ECF No. 34 at 7. However, the court concludes for the following reasons that petitioner's claims are not entitled to a later trigger date.

As to Ground One, petitioner alleges that the limitations period did not begin to run until October 15, 2014, when he discovered "Newsome's willingness to publicly declare [petitioner]'s innocence" in a "sworn declaration exculpating [petitioner]." ECF Nos. 43 at 7; 34 at 21. Ground One is based on co-defendant's Sheldon Ray Newsome's ("Newsome") Declaration dated October 15, 2014, ECF No. 34-1. In the declaration, Newsome declares that he was advised by his counsel at trial "not to disclose that 'petitioner' was not an accomplice to the robbery" "as it would demonstrate [Newsome's] culpability in the charged offenses" and so Newsome "acted to withhold the fact that [petitioner] had no participation in the [robbery]" by failing to "disclose the truth." ECF No. 34-1 at 1-2. Petitioner also provides a secondary, more detailed, declaration from Newsome dated April 20, 2017, ECF No. 34-7, declaring petitioner's lack of involvement in the robbery. Although petitioner alleges that the evidence contained in these declarations from Newsome were not discoverable until the first declaration was received on October 15, 2015, the facts contained in the declaration were readily available to petitioner at the time of trial. Petitioner was aware that Newsome, as a participant of the robbery, would be able to identify the individuals that were involved in the robbery, and was also aware at trial that Newsome did not disclose that petitioner had not been present or participated in the robbery. "The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim '*could* have been discovered through the exercise of due diligence,' not when it was *actually* discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added). In view of that, the statute of limitations does not run on the date the evidence supporting a claim is obtained, but rather, when the facts could have been discovered.

Moreover, there is no evidence of petitioner's due diligence of attempting to contact

Newsome relating to his claim of innocence. See Woratzeck v. Stewart, 118 F.3d 648 (9th Cir. 1997) (Court found petitioner did not show due diligence in that he "had more than fifteen years to uncover his claim" that juror interviews revealed that a jury member served as a witness during deliberations). It *is petitioner's diligence* that is at issue here, not the recanting witness. No evidence has been presented that petitioner *even tried* to contact Newsome at a time when all of his (Newsome's) appeals and collateral appeals would have probably been finished, and persuade him to tell the truth, even at a time when the "truth" of petitioner's participation would not, or could not, have adversely affected Newsome.[5] Petitioner cannot simply assume contact with Newsome would have been fruitless, and also be termed to have acted with due diligence. Due diligence demands action, not necessarily successful action.

Ground Two is based on declarations from Henry Troy Fontes ("Troy Fontes"), Debra Marie Fontes ("Debra Fontes"), and Eslin C. Redman ("Eslin"). See ECF Nos. 34-2; 34-3; 34-8; 34-9. Petitioner alleges that the limitations period as to Ground Two did not begin to run until "sometime before 2014" when he discovered, through his mother Eslin, that Troy Fontes had identified the stolen property in the robbery as belonging to a previous resident during a family gathering on July 4th, 2003. Petitioner alleges Troy Fontes is an exculpatory witness, who identified the stolen property seized from petitioner's residence as belonging to a deceased man who previously resided in petitioner's residence. See ECF No. 34-3; 34-8. Petitioner further argues that he did not know "where the bag of tools came from or who they belonged to at the time of trial." ECF No. 43 at 7. However, the asserted ownership of the stolen property was known prior to trial, as it was identified and recorded in the police records. ECF No. 34-8 at 3. Despite petitioner being unaware of the ownership of the stolen property, petitioner could have discovered it with due diligence at the time of trial by requesting the police records as he did when he provided Troy Fontes with the information regarding the stolen property in 2013. See ECF No. 34-3 at 2 ¶ 6 (To provide Troy Fontes with the information regarding the stolen property, "[petitioner] had located the files and records related to the property seized by police

---

[5] When asked at hearing when Newsome's collateral reviews, if any, had been completed, counsel for petitioner could not impart that information.

from the residence the undersigned and his sister owned and rented to Mr. Reynold's."); see also Ford, 683 F3d at 1235; Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001) (To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice.")

For these reasons, the undersigned finds that the evidence presented does not support a later trigger date for the commencement of AEDPA's limitations period pursuant to Section 2244(d)(1)(D). Accordingly, the instant federal petition is untimely pursuant to Section 2244(d)(1)(A).

## II. Actual Innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar…[or] expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (citations omitted). To present a credible claim of actual innocence, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggen, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329; see House v. Bell, 547 U.S. 518, 538 (2006)). "Actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). The actual innocence exception applies to a "narrow class of cases implicating a fundamental miscarriage of justice." Lee v. Lambert, 653 F.3d 929, 937 (9th Cir. 2011).

In Ground One, petitioner contends that Newsome's declaration demonstrates that he is actually innocent of robbery, thereby supporting an equitable exception to AEDPA's limitations period. In the declaration, Newsome declares petitioner was not present, nor did he participate, in the robbery. ECF No. 34-1 at 1-2. The declaration further states that Newsome was advised by

his trial and appellate counsel not to disclose that petitioner was not an accomplice to the robbery, as it "would demonstrate[Newsome's] culpability in the charged offenses." Id. at 1. It was only after Newsome had exhausted his direct and collateral review that he decided to "disclose the truth" many years later. Id. at 2. Petitioner further argues this evidence was not discoverable until Newsome was willing to confess to petitioner's role in the robbery.

A petitioner asserting a convincing actual innocence claim need not also prove diligence in order to excuse timeliness. McQuiggin, 569 U.S. at 398-99. However, timing "is a factor bearing on the reliability of the evidence purporting to show actual innocence. Id. at 386-87 (citing Schlup, 513 U.S. at 332) (internal quotations omitted). Accordingly, "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." Id. at 399. At the hearing, petitioner argued that contacting another inmate was prohibited by the prison's institutional policy, however, petitioner neither made any attempts to contact his co-defendant for over a decade nor seek an avenue in which he could have identified in seeking to present his claim. Petitioner's "unexplained delay" without any evidence of any effort in the record fails to establish his claim.

Moreover, review of the declaration fails to establish that "no reasonable juror would have convicted [petitioner] in light of the new evidence." See Schlup, 513 U.S. at 327. Petitioner confuses present day evidence which merely conflicts with trial evidence as evidence which would have undoubtedly caused a reasonable juror not to convict. The recent declarations of Newsome that petitioner was not involved in the robbery (but, of course does not identify who was) merely conflicts with the evidence that petitioner was indeed at the scene. As respondent points out, Newsome's declaration fails to discredit Sergent de Borda's identification of petitioner. ECF No. 39 at 14. Sergeant de Borda conducted a surveillance of the residence at the time of the robbery using cameras and binoculars. Resp't's Lodg. Doc. No. 15 at 3. Sergeant de Borda had also taken a photograph showing petitioner holding a gun. Id. at 4. Also, clothes worn by the robber described as Redman were found at petitioner's residence. Further, testimony at trial connected the tools and related items found in petitioner's residence with items taken in the robbery. The fact that the Bronco described at the scene of the robbery was registered to

petitioner's girlfriend, thereby linking petitioner to the scene in the context of all the evidence, is treated as simply an inconvenient truth to be ignored. Accordingly, reasonable jurors could have found petitioner guilty even if they heard co-defendant's testimony. In a second declaration from Newsome dated April 20, 2017, Newsome declares that he "did not see" the property stolen during the event, nor that any of the men that accompanied him "took or removed any bags, knives, tools, Maglite, or camping tools." Id. at 4. It is unclear how Newsome's testimony would have sufficiently demonstrated petitioner's innocence given trial evidence that the tools and related items were indeed stolen and found at petitioner's residence.

In support of Ground Two (even assuming that the ineffective assistance allegations could be part of the actual innocence allegations), petitioner alleges that the declarations from Troy Fontes and Debra Fontes (who cohabited with petitioner at the time of the robbery) show that the stolen property used to convict petitioner was not in fact stolen, but belonged to a previous resident (Harry Reynolds) that had previously resided in petitioner's and Debra Fontes' home. Debra declared in 2017 that she was aware that Reynolds had tools and other related items in her basement, that she "took care of " the tools and property, and that she was unaware that these tools and related items had been used as evidence against petitioner. ECF No. 34, Exh. 9 ¶¶ 11, 16. Reynolds had died in 1992. Id. at ¶ 13. Troy (Debra's brother) declared in 2017 that he was familiar with Reynolds tools, and that Reynolds kept them in the basement where petitioner had resided. Id. at Exh. 8. He (Troy) had helped Reynolds load his tools on numerous occasions. Id. He believed a grave injustice had taken place to admit these tools as evidence against petitioner for the robbery.

However, review of the declarations fails to establish that no reasonable juror would have convicted petitioner in light of the new evidence; indeed the declarations are palpably incredible. At trial, Debra Fontes testified, in part, to the search that occurred in her and petitioner's residence where a bag containing the stolen property was seized. Resp't's Lodg. Doc. No. 10 at 826-835. Debra Fontes testified, "she had never seen that bag and I have never seen that in my house. I keep the house and if I would have seen that bag, I would have looked in it. I am a nosey person. And I have never seen that nor anything in there." Id. at 833. The trial testimony

11

destroys the credibility of her 2017 declaration. The testimony at trial by Debra Fontes demonstrates that her new testimony would not have established petitioner's innocence.

Similar credibility destruction occurred with respect to the 2017 declaration of Troy. In his first declaration submitted in the state court habeas petition (2014), ECF. No. 34 at 3, Troy stated that he had spoken to Reynolds in 1994 or afterwards wherein Reynold had told him that the tools seized by the police were his, and had been kept in petitioner's residence at the time petitioner resided there. The problem with this testimony was that Reynolds had died in 1992, long before the robbery or any seizure of tools. See Debra's 2017 declaration above. In the 2017 declaration, Troy was compelled to admit that he "mistakenly" had referenced the 1994 discussion with Reynolds. Id. at Exh. 8 at 31. Any jury would have colored the remainder of his declared facts with this inaccuracy.

Accordingly, the declarations do not establish that no reasonable juror would have convicted petitioner in light of the new evidence. It is clear that this case does not fall into the narrow class of cases implicating a fundamental miscarriage of justice. Furthermore, an evidentiary hearing is not necessary as allegations stated indicate that such a hearing would be futile. See Lambert, 653 F.3d at 936-37 (exacting standard for actual innocence evidentiary hearings). Therefore, the actual innocence exception to the AEDPA one-year statute of limitations does not apply here.

Finally, although the undersigned has reviewed the actual innocence gateway independently for purposes of the Motion to Dismiss, the undersigned would also find as an alternative that petitioner would have to show here that the Superior Court was AEDPA unreasonable, see Harrington v. Richter, 562 U.S. 86 (2011), when it issued an adverse decision on the merits of petitioner's actual innocence claim. ECF No. 34, Exhibit 4. Although the undersigned has not been directed to, nor found on his own, cases applying the Harrington unreasonableness standard in the actual innocence gateway analysis, there is no reason not to apply this merits standard to the limitations issue, as it would certainly be applied if the court were ruling on the merits of an actual innocence claim.

////

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 39, be granted;
2. The Amended Petition be dismissed with prejudice; and
3. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections should be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 14, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE